The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Please be seated. Our next case is Kelley v. Bohrer. And we'll hear from Mr. DiMichele. Thank you, Your Honor. Good morning and may it please the Court. Andrew DiMichele on behalf of the State Appellants who are respondents below. In October 2014, Kenneth Kelley made the terrible decision to get behind the wheel of a car while drunk and flee from a police officer. He sped down the road over double the speed limit and rear-ended a stop car at an intersection, killing five people. For this, Mr. Kelley was charged in a 28-count indictment. Those counts included two forms of manslaughter by vehicle, one form charging gross negligence, the other charging criminal negligence. And the indictment also charged him with two forms of alcohol-related negligent homicide, both of them charging, or all of them charging, a simple negligence. After discussing his case with his attorney, Mr. Kelley decided he was going to plead guilty to all 28 counts. He informed the court of sentencing that he chose to plead guilty because he had accepted full responsibility and did not wish to have the families relive the horrors of the incident at trial. Yet years later, Mr. Kelley filed a state post-conviction petition claiming that his plea was in fact invalid under the Supreme Court's decisions in Henderson and Bradshaw because he did not understand the nature and elements of the offenses. The state court denied the claim, concluding that it was without merit because Mr. Kelley clearly acknowledged his guilt and had a sufficient understanding of the nature of the charges. However, the district court below, sitting as federal habeas court, granted Mr. Kelley's federal habeas petition on that ground, and in doing so, it contradicted the state court and found that Mr. Kelley was not informed of the critical elements of manslaughter by vehicle. The state appellants in this case are asking this court to reverse the decision because the district court misapplied the AEDPA standard and rejected valid evidence in the state court record without basis. The issue in this case really boils down to strict application of the AEDPA standard. The district court, in essence, took the Henderson opinion, which indicates that in order to satisfy due process, the defendant must be aware of or be on notice of the elements and nature of the charges. However, the district court in this case said that not only does the defendant have to be aware of the nature and elements of the charges, but that he has to have an understanding of the nuances between those elements, between those mental states, and all of the counts charged in the indictment. The problem with that analysis is that the Supreme Court in Henderson and Bradshaw has never held that that sort of knowledge is necessary. The Supreme Court has held only that the defendant must be on notice of the elements charged in the indictment. And in expanding the Supreme Court's... Did Mr. Kelly sign as part of his plea that he fully understood the charge in the indictment and the elements of the offense? Yes, Your Honor. I mean, I think that that is sufficient evidence. Would he be bound by that statement? He can be, and he should be. But more importantly here, the question is whether the state post-conviction court would be objectively unreasonable in relying on that statement to conclude that he in fact had an understanding of the nature and elements of the charges. So on that, we have the state PCR court has that evidence and also has the testimony that took place during the PCR proceedings. So is your position... And I think in that testimony, trial counsel says what he did. Went over the indictment. I think Kelly confirms that. But concedes, I guess, that he didn't go through the nuances to your point of the different forms of negligence but talked about the entire indictment and the factual relationship of the indictment or the facts to that indictment. So here's what I'm trying to figure out. Does the consideration of the waiver that Judge Agee read, does it need to be considered in light of the testimony from trial counsel? And if so, is it your position that that testimony is inconsistent with the waiver or consistent with the waiver? It is our position that trial counsel's testimony at the PCR hearing was not inconsistent. Trial counsel testified that he may have discussed the nuances with Mr. Kelly, but that he just couldn't recall. Of course, that's even presuming in the first place that that's required under Henderson, which is our primary position that it's not. Your position, that's not required. It's not required, at least that the Supreme Court has not held that. And in applying Henderson, the state court wouldn't be objectively unreasonable in concluding that that is not a requirement. But back to your Honor's point, I think that trial counsel's testimony at the post-conviction hearing did not conflict. However, even if it did, the state court still has a choice. Now we have conflicting testimony. Trial counsel averred in a written document, signed it, saying, I advise the defendant of the nature and elements of all the charges. Then years later, he testifies in theory, I didn't, or I can't recall. The state court then has to make a determination of, do I believe his statement that was contemporaneous with the plea, or do I believe his statement now and conclude that he didn't explain? And that is a credibility determination that the state court has the right to make, and that the district court, I think, doesn't have the right to question, so long as there's competent evidence of the record to support. And again, there's the waiver form that counsel signed saying he did. So even if there is a conflict, the state court, again, to bring it back to the AEDPA standard, wouldn't be objectively unreasonable in interpreting the record in that way. So the district court's conclusion that the waiver form was essentially vitiated by the record, I think, is just simply incorrect. So the argument here seems to revolve in some part around, how do you read the state trial PCR court's decision? Can you only read it one way, which would be the way the district court read it? Or could you read it another way? Would that be reasonable? In AEDPA terms, could a fair amount of jurists disagree about it? So there appear to be two versions. One is the first nine or so pages of the court's opinion, in effect, are recitations of the parties' positions and arguments. And then the last page and a half are the court's conclusions. The district court concluded differently in that the first nine pages, some of that was recitation. Some of that were conclusions of law placed within those. And that those did not necessarily jive with the last page under conclusion. So that's a long way around the barn. What do you say about that? Yeah, so I'll begin with stating that this court's review standard is de novo. So this court owes no deference to the district court's interpretation. With that said, the district court's interpretation of the PCR court's opinion is difficult to reconcile because the way the court interpreted it conflicts with the court's conclusion. It doesn't make any sense to read. State court's conclusion. Correct, correct. The state court ultimately concluded that the claim was, quote, without merit and, quote, clearly, that Mr. Kelly clearly acknowledged his guilt and had a sufficient understanding of the nature of the charges. That was the bottom line conclusion. And if the court was then inserting into its, you know, first nine or so pages, 15 paragraphs of its opinion, a bunch of facts or findings that contradict that opinion, that conclusion, the opinion makes no sense. I think that when this court, the federal court, reviews the state court's decision, it should focus on the bottom line conclusion, the decision that it made, and determine whether that was objectively unreasonable. And it should certainly not. But in doing so under 2254E1, we've got to presume the factual findings were correct. I totally get that we've got to decide what's a factual finding. I understand that. But we don't just look at the bottom line. We look at the bottom line in light of the facts presumed to be correct as found by the PCR court. But that just leads us back to the question of what is a finding of fact, right? Insofar as the court should review any facts that are necessary to the state court's decision. But, yes, I agree with your honor. Just take, for example, right, instead of what we have here, there is a section of the state PCR court's opinion that says, I make the following findings of fact, having considered all the evidence, and lists out the bullet points that your colleague puts on page 21 and 22 of her brief, and listed those out. I understand that that is a counterfactual, but accept the hypothetical. Yes. We would then have to presume that those were true. Correct, yes. And even if they were inconsistent with the final conclusion, we would have to take those facts presumptively as true, absent some basis for challenging them as a factual matter. Right, and I think that at that point, so there's two layers of EDPA review. The first layer would be you would determine whether deference is owed, and if the state court's decision is tainted by unreasonable factual findings, then that deference is stripped away and the court would conduct a NOVA review, which, again, would not necessarily result in the same conclusion, the same outcome. But you are correct in that assessment of the factual findings, if they are contributing to the court's decision, then the court does review them to ensure that they are consistent with the record and not objectively unreasonable. In this case, though, we urge the court not to read the state postconviction court's memorandum opinion in a manner that is illogical and, frankly, bizarre. It would make no sense for the court to, for nine pages, list fact after fact after fact that directly conflict with its ultimate conclusion and then at the bottom say, well, we ultimately find this without merit. I think that's not a reasonable interpretation when, as we argue, there is an equally, if not more reasonable interpretation, which is that the court is simply offering a recapitulation of the party's arguments in the first section of its opinion. Counsel, I appreciate that approach to the PCR order. It seems, as you read it, you've got two points. One is a description of the arguments, which you just talked about. But it seems like most of the comments, when read verbatim, are about what happened at the plea hearing, what was done on the record, what the proffer said and what it didn't say. And then the statement later about trial counsel conceded that he didn't explain the nuances. That's different. That's not necessarily about what happened at the proffer. But I guess my point is, even looking at some of those descriptions on page 5 and 6 and 7 and 8, they seem to mostly be talking about what happened at the plea hearing. And we have law that says the understanding of the elements don't have to result from that proceeding. So I wonder whether, in addition to the argument that they are not yet findings, they are instead descriptions of arguments, that what is talked about there aren't findings that would be fatal. Maybe there might be an exception about fail to comply with Maryland law. The state appellants don't dispute that some of the assertions that Kelly makes and some of the assertions that the district court found and the post-conviction court found are incorrect. They are correct. We're not disputing, for example, that trial counsel did not, at the plea hearing, describe the elements or nature of the offenses. And as Your Honor pointed out, that's, of course, under Henderson and Bradshaw. It doesn't have to derive from the testimony and the hearing proceedings when the plea was entered. Is it your view, going through the passages Judge Quattlebaum read, that that's just the state court reciting the party's arguments? Yes. I mean, I think that even those descriptions of what occurred at the plea hearing are recapitulations of what Mr. Kelly was relying on in support of his claim that his plea was invalid, in that our position is that even though some of those facts, not all of them, but some of them may be true, that doesn't matter because the ultimate conclusion the court gave, the state court gave, was that the claim was without merit because Mr. Kelly had a sufficient understanding of the nature of his charges. And the fact that trial counsel didn't explain to him at the plea hearing doesn't undermine that because under federal law, there doesn't have to be an explanation on the record as long as the record supports the validity of the plea based on evidence that the defendant understood the nature and elements of the charges. All right. Thank you very much. You've got some rebuttal time left. Ms. Davis. Thank you, Your Honors. And may it please the Court, Mary Claire Davis, on behalf of Kenneth Kelly. Your Honors, this Court should affirm the District Court because Mr. Kelly did not receive real notice of the true nature of the charges against him. And according to clearly established Supreme Court law in Henderson and Bradshaw. Can you start with that? Because I read the standard as being notice of the elements, but you're very specific and you're a good lawyer, so I understand why you're doing it. Where am I getting real notice of the true elements? Those two adjectives seem to be doing a lot of work in your argument, in your brief. And I appreciate you starting there. And is that, in your view, is that necessary for your argument? I mean, if I read, let's just say hypothetically, those cases as not requiring real notice of the true elements, but instead just notice of the elements, does that doom your claim? So I think in Bradshaw, what we have is sort of an extension of the statement that I just made, which is that if a defendant pleads guilty without being informed, and Bradshaw clearly says informed of the crime's elements, then the plea has to be invalid. And so I think that real notice means that the defendant has to be informed of the elements of the crime. And here, Mr. Kelly was not informed of the elements. The mens rea elements set forth in counts 1 through 5, 6 through 10, and really 11 through 20. What about the statement he signed that he had understood the indictment and the elements of the offenses? So I think we have to look at that testimony and all of this in the context of what his trial counsel told him. And this is very important. And in doing so, the state PCR court made determinations. So I would argue you are- Because it had all that before it. The PCR court did have all this before it. I would argue, though, that it ignored evidence in the record that compels the conclusion that Mr. Kelly was not informed at all about any of the mens rea elements of these crimes. So why does it- When you have contrary evidence with the lawyer and the defendant saying, I read this, I knew what the elements were, it seems like that's a contradiction in evidence. So why is that conclusion compelled? Because I think you have to look at when Mr. Kelly signed the waiver form that said, I understand the nature and elements of these charges. You have to look at what he was told. Supreme Court case law has long held you have to look at the understanding. So what is the contrary evidence? So what do you want us to look at, as you say, to put that in context? Because the lawyer says, I don't remember. So that's not helpful. And so what am I looking at to- If in theory I could, what would I look at to contradict that he didn't know the elements that are in the indictment? So I would point you to JA 287 to 292. And I'd like to go through this because it's very compelling. We have post-conviction court counsel asking, are you familiar with gross negligence? It's a factual determination that needs to be done on a case-by-case basis. Mr. Jones responds, there is no specific definition. She tries again. She says, how would you describe the difference between gross negligence and criminal negligence to Mr. Kelly? And he said, I'm not sure. Just so I understand, I've read it. I don't need you to read it to us. But so your argument is, OK, there's nothing contrary that he understood the elements. But he was not given notice of what gross negligence means. So in your view, Henderson and Bradshaw stand for the proposition that you have to have notice, not just of the elements, but you need the legal explanation of each element. So when we think about in federal court, we have plea agreements, and it states these are the elements of the offense. But to the extent there's any word used in there, if it's not been explained legally, then that fails Henderson and Bradshaw, which basically means all federal pleas are invalid. Not necessarily right. So I think in this case, it's different because we actually have counsel. And if you keep looking on the pages I mentioned in the JA, Mr. Jones says, I told Mr. Kelly that in my opinion, the elements of these crimes are you were speeding, you were intoxicated, and you rear-ended a car. I don't think that's what that says. But can you go back to my question? I know you want to move on to it. But the question is, is your standard that every phrase, gross negligence, for example, in an element of an offense, in your view, Henderson and Bradshaw, requires an explanation of the nuance of what that means before you can accept a plea? So if you don't have the nuance, then you cannot accept a plea. No, Your Honor. I'm not arguing for that. So you agree that's not required. So why is this case different? Then go back to why is what we've said inconsistent with the statement that I'm familiar with the elements? You say, well, he didn't explain the nuance. But you've just admitted that they don't have to explain the nuance. So now how is it inconsistent with the statement, I'm familiar with the elements? Because when Mr. Kelly says the elements, there is nothing in this record that shows that anyone informed him what the elements even were. Or that the charges were different at all. Actually, what we have in the record is him saying, I'm familiar with the elements. That's evidence that he's familiar with the elements. I mean, it's some evidence. I understand you might want to say, that's not very good evidence. But you can't say that's not evidence that he was familiar with the elements. It's evidence that he was familiar with the elements as his attorney explained them to him. And so when we look at the waiver form, in case law sets, the Supreme Court says we have to look at the totality. We have to look at the understanding of the defendant. And here we have an attorney who doesn't even explain the difference. He basically perpetuates this narrative that all of this is the same. And the trial court did the same thing. The trial court never asked Mr. Kelly if he understood the nature and elements of the charges. Not that he's required to. But he never did. And he, in fact, said, he didn't even really list all of the crimes in the indictment. He listed the shorthand for some of them and then said, you know these are all the same. But in that portion of the trial court, when he says they're all the same, you can maybe read it different ways, but it looks like he's referring to a lot of the DUI-related offenses. And I grant you on the record at the hearing they didn't go through the elements. What I wonder, going back to what was testified by both Kelly and Jones, I think was that Jones more than once went through the indictment with Kelly. Isn't that evidence in the record? That testimony is in the record, Your Honor, yes. And there's testimony that he doesn't recall if he went through the nuances. Is that in the record too? That's correct as well, yes. So we got that he's gone through the indictment. We got a form that says that he went through the elements. We got a form that says, Kelly says he understood and knew the elements. And we really don't have anything, I can't see any evidence that says that didn't occur. Because he's saying he doesn't remember. So I'm trying to get from how I don't remember translates to being inconsistent with the waiver. So I think the first point, Your Honor, is that under Henderson, Henderson does create a presumption that in the normal case it may be that counsel has gone over the indictment or has gone over something. But that presumption can be rebutted and the court needs to look at the entire record in order to decide whether that presumption should apply. And again, I know I sound like a broken record, but to come back to these pages in the J.A. where Mr. Jones not only cannot explain the difference between gross negligence and criminal negligence, he never testified that he told him that these were elements of the crime. You never testified he didn't. He just said I don't remember. I respectfully disagree, Judge Richardson, because he says this is what I told him. Four times he says this over the span of four pages in the transcript. He says I told him it's enough and these are the elements in my opinion. And he says this on the bottom of 289. He says you were speeding, you were intoxicated, and you rear-ended the car. That's all they need to prove. He said nothing about state of mind. He said nothing about how criminal negligence, Counts 6 through 10, is a misdemeanor. And this was a new statute. And the case law is very clear that these are different. They're not lesser included offenses. They are different. They have different elements. Mr. Kelly was never made aware of that. I think I hear your point that when you look at what Jones said, he recalled, that seems arguably to be inconsistent with going through the elements. Is that fair? When we say inconsistent, I think the representation that Mr. Kelly was making that he understood the nature and elements was based on the advice of his counsel. And so I don't know that it's inconsistent, but it's more, yeah. But I guess it seems with that argument, taking that as an argument, there's another way you could look at this evidence, which is the waiver statement is affirmative evidence that he knew and understood the elements. And it sounds like the other evidence that you're referring to, you claim either informs that or suggests something different. And I guess the question is, you may be right, but is the PCR court entitled to look at all that and say, I view what happened as at least consistent with what he signed at the plea hearing? And so while you may be right, that may be an argument that wins the day, seven out of ten times. It's something that there's enough evidence on the other side where under our standards here, we're not allowed to say no. So to your first point about whether the state court has to look at all of this, yes. It's clearly established by the Supreme Court that this is a totality test, that the state court is tasked with looking at the evidence before it. Just as your job is to look at what the state court was, the post-conviction court was presented. But if you look at the state court's decision, it is unreasonable in many ways. The state court relies on three things to conclude that Mr. Kelly's plea was voluntary. Number one is the proffer of facts from the prosecution. Number two is that Mr. Kelly said he was guilty. And number three is the waiver form. And none of these things, independently or together, show that he understood that he got that real notice, the information about the elements of the crime. And so looking first at the... Do you agree that you just flip back and forth there? I want to make sure you agree. The question we have to ask is whether he got notice, not whether he had an understanding. The fundamental question that we're asking is sort of an objective question. Did he receive notice? If, for one reason or another, he failed to understand that, which might be a separate argument, that, at least under Henderson and Bradshaw, which is the only question we're asking, that wouldn't matter. I think that's fair. And I think the phrase from Bradshaw, informed of the elements, is what I focus on. But yes, being informed of the elements of the crime. And so here... Is it Bradshaw that uses notice? Is that where the notice comes from? Notice comes from Henderson. Henderson. And then Bradshaw uses informed. But nobody uses understands. Right? Because we're not trying to get... I mean, the point is this is sort of an objective inquiry, right? Were you informed? Were you given notice? Was this told to you? Not, what was your subjective understanding? So the Boykin case, which was pre-Henderson, but still talked about this due process, how a plea has to be voluntary, it does say that the defendant must have a full understanding of the charges. So there is that emphasis on what the defendant understood, for sure. So I think that... It's not in Henderson and Bradshaw. Neither of those talk anything about understanding. And those are the two cases that you've alleged it's inconsistent, right? Right. I think that the takeaway from both of them is that the defendant has to understand. I mean, otherwise, that seems like it would be really bad law to say that a defendant can plead guilty without understanding the charges against him. That seems like a classic due process violation. And so I think we have to look at what Mr. Kelly understood at the time of the plea hearing. And so to that point, you know, the state court emphasizes the proffer of facts, which says... Does that create a problem with the subjective problem? If it's really subjective, I guess I'm probably not right, but if it's really subjective, then we just look at his statement that I understand the elements. I wouldn't say... And the fact that your argument is like, well, but his subjective understanding wasn't objectively good notice, right? If we're just subjective, if it's his understanding, the very best evidence of one's understanding is what one says contemporaneously with the act. I think that's a fair point, but I don't think that this is completely a subjective analysis. I think the court... That's what I'm trying to get you to ask. I said it was objective. You said, no, it's subjective. Right now I say, well, subjective, you would definitely lose on, like, is it now objective? I did not say it was subjective, and I wouldn't say that. What I'm saying is that, you know, when a court looks at the record and the totality of the circumstances, is that understanding evident from the record? That can be an objective decision, but I think, you know, looking at what the defendant was informed, what the lawyer said... How is the defendant's actual understanding not purely subjective? If the test is, what is the defendant's actual understanding? Like, that is by definition subjective. You're saying, no, no, that's objective. I don't understand that argument. I understand it can be objective. It could, in theory, be subjective. I don't think that's true, but it could be subjective. But you can't say his own understanding is somehow an objective inquiry. I think it's more of an academic conversation. Yeah, but I like academic conversations, right? Because they inform the standard that we apply to the facts that are before us. Right, so I think I would stick with the answer that the court has to look at the record, at the testimony, at the evidence before it, to determine what was told to the defendant, right? And so this is a rare case where we actually have an attorney that is saying, basically describes a strict liability crime to Mr. Kelly. You were drinking, you were speeding, and you rear-ended a car. That's all they need to prove. And so everything after that, that is Kelly's understanding from his own counsel. But that, he does, there is that part of the transcript, but there's also the part where he's asked if he described the difference between the two, and he says he doesn't know. So I think if he said, I remember this like no other case, and here's why. And I can say exactly what I said, and I know it from beginning to end. Here's what it was. That would be one thing. But that's not what he says. He says, when asked about what at least the district court seems to be concerned, that he has to know the nuances. He says, I don't remember. So we're kind of with, I don't remember. We got this testimony about when he talks about the facts like you talk about. We got the testimony that he went over the indictment with him, and we got this waiver document. And I get how one of those four things that's the best for you is where he says, look, I said you were drunk, you were speeding, you ran into the back, that's it. But I think we've got to look at it with the others, and I just wonder if it only leads to one result. Well, Your Honor, I think, first of all, the fact that he doesn't, I mean, it would be different. I'm sorry, my red light is on. You can answer the question. So I think it would be different if he said, absolutely, I always go through the indictment, and I pick out and explain, you know, even in layman's terms, you know, gross negligence means this wanton and reckless disregard. Criminal negligence is less culpable, you know, and it requires this. I think that would be very different. So the fact that he doesn't know what he told him but repeats four times that he told him the only thing they need to show are the three things I just mentioned, I think that weighs heavily in our favor. Thank you. All right, thank you very much. Mr. DiMasselli, you've got a little rebuttal time. Thank you, Your Honor. I think the issue in this case certainly boils down to whether the state court properly applied Henderson, and in order to determine whether it did that, I think the court should focus on the holding and the problem in Henderson. And as the four-justice concurrence said in that case, the problem in this case, in Henderson, is that the defendant's guilt has been established neither by a finding of guilt beyond a reasonable doubt after a trial, nor by the defendant's own admission that he is, in fact, guilty. The defendant did not expressly admit that he intended the victim's death, and his plea of guilty cannot be construed as an implied admission that he intended her death because the district court has found that he was not told and did not know that intent to kill was an element of the offense to which he was charged. So the issue in that case was a failure of proof. The prosecution has to either prove beyond a reasonable doubt at trial that the defendant was guilty of each of these elements, or the defendant must be aware that these elements exist and admit and say, I am, in fact, guilty. And when he says that, his guilty plea has to encompass all of the crime, all of the elements of the crimes he's pleading guilty to. In Henderson, because the defendant wasn't even aware that intent to kill was an element, when he said, I pleaded guilty, his plea was invalid. It was defective because the state hadn't proved it beyond a reasonable doubt, and he hadn't admitted to that. In this case, the defendant read the indictment. I think some of the best evidence that the defendant was aware of the nature and elements of the charges is the fact that he admitted not only in the waiver form, but also at the PCR hearing that he went over the indictment with his attorney. So, therefore, he has true knowledge of all of the elements in the indictment, all of them, including the mens rea. He must have read that there was gross negligence, criminal negligence, simple negligence, because he discussed these things with his attorney. And that is what Henderson requires. And, in fact, the concurring opinion in Henderson also indicated that when the indictment contains the correct charge and is, at some point, read to the defendant, the plea of guilty may well be deemed a factual admission that he did what he was charged with doing so, and that the judgment of conviction may be validly entered against him. What do you do with our case? I think it's our case law that talks about knowledge of the elements, and it says, you know, rote reading of the elements is insufficient. I mean, I think that the Supreme Court also suggested that a formalistic, ritualistic, formal litany of charges is not necessary. In this case, the defendant had the benefit of not only reading the indictment, discussing it with counsel, but, as I think my opposing counsel has been talking about a lot during her argument, he had an in-depth discussion of the crimes with his attorney. And I think the bottom line is certainly Bradshaw indicates that the defendant has to be informed of the charges, of the elements, but also he has to understand the nature of the charges. What is it, in fact, he's pleading guilty to? And, in this case, the defense counsel explained to Mr. Kelly the nature of the charges by connecting those to the factual circumstances in his case. I don't think I disagree with counsel. I don't think that trial counsel ever told Mr. Kelly that these were the elements, that driving drunk is an element or that speeding was an element. Counsel informed Mr. Kelly that his conduct under the circumstances satisfies the most severe mental state, gross negligence, and, therefore, all of the other mental states. And, therefore, the state had enough to find him guilty. I see that I'm out of time. All right. Thank you very much. Thank you, Your Honor. Appreciate your argument. The court notes that, Ms. Davis, you were court-appointed, and we wanted to express our appreciation to you for undertaking that task. So, with that, we'll come down and greet counsel and move on to our next case.
judges: G. Steven Agee, Julius N. Richardson, A. Marvin Quattlebaum Jr.